UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STRIKE 3 HOLDINGS, LLC,

                    Plaintiff,

-vs.-

JOHN DOE subscriber assigned IP address 24.104.252.172,

                    Defendant.

18 CV 2648 (VEC)

**DEFENDANT JOHN DOE'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA**

      Defendant, sued herein as "John Doe" and identified only as an Internet services subscriber assigned Internet Protocol ("IP") address 24.104.252.172, moves, pursuant to Fed. R. Civ. P. 45(d)(3) and this Court's Orders dated June 26, 2018 (Docket No. 10) and September 12, 2018 (Docket No. 15), to quash the Subpoena served by plaintiff Strike 3 Holdings, LLC ("Strike 3"), a pornography company, on defendant's Internet Service Provider ("ISP"), Charter Communications, Inc./Spectrum ("Spectrum").  By means of its subpoena to Spectrum, Strike 3 seeks disclosure of defendant's true name and physical address, so that defendant can be served with its summons in this lawsuit.   As shown below, the Subpoena should be quashed because Strike 3 has failed to state any plausible claim that this defendant actually infringed any of Strike 3's copyrights in its pornographic movies.

    **I.**       **PRELIMINARY STATEMENT**

      This action is one of hundreds if not thousands of "John Doe" lawsuits filed by Strike 3 in federal courts across the country, seeking monetary damages from individuals who Strike 3 claims have downloaded or shared unauthorized copies of its pornographic movies via BitTorrent file-sharing networks.  In each lawsuit, Strike 3 identifies its target only by an Internet Protocol ("IP") address which it alleges was used for infringing activity.   It then moves *ex parte*

for leave to subpoena the identity of the subscriber to whom the address was assigned from the ISP.  Without opposition, the *ex parte* motions are often (but not uniformly) granted.

Typically, Strike 3's service of its subpoena on the ISP effectively ends the case, as most individuals do not wish to become embroiled in a pornography lawsuit, regardless of whether they have a valid defense.  Once the ISP notifies its subscriber that a pornographer is demanding disclosure of his or her identity and suing for copyright infringement, the case is quickly resolved, whether pursuant to settlement or upon Strike 3's determination that it cannot easily prevail against that defendant.  In most cases Strike 3 voluntarily dismisses its claims without even serving a summons, and it is virtually unheard of for a case to proceed to discovery.[1]

A striking aspect of Strike 3's litigation strategy is that it files its "John Doe" lawsuits without alleging any facts to support a plausible claim that the subscriber to whom an ISP assigned the IP address identified by Strike 3 is the same person allegedly infringing its copyrights.  The mere identification of an IP address is not sufficient, as the person sharing unauthorized copies of Strike 3's pornographic movies could just as likely be a family member or visitor of the ISP subscriber, a neighbor taking a free ride on the subscriber's unsecured wireless network or who has hacked into a secured network, a coffee shop patron, or even someone spoofing the subscriber's IP address in order to avoid detection.[2]  As one court has stated, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any

---

[1] *See, e.g.*, Declaration of Randall L. Rasey dated September 26, 2018 (cited herein as "RLR Decl."), at ¶ 8 and Exh. A thereto.

[2] *See generally*, Farha Ali, "IP Spoofing", THE INTERNET PROTOCOL JOURNAL, Vol. 10, No. 4 (December 2007), available at https://www.cisco.com/c/en/us/about/press/internet-protocol-journal/back-issues/table-contents-38/104-ip-spoofing.html (accessed on September 25, 2018).

number of computer devices may be deployed[.]" *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) (Brown, M.J.).

Around one month ago, in *Cobbler Nevada, LLC v. Gonzalez*, __ F.3d __, 2018 WL 4055766 (9th Cir. Aug. 27, 2018), the Ninth Circuit Court of Appeals held that "a bare allegation that a defendant is the registered subscriber of an Internet Protocol ("IP") address associated with infringing activity" is <u>not</u> sufficient to state a claim for either direct or contributory infringement. While consistent with decisions by several lower courts in this district and others, *Cobbler Nevada* appears to be the first reported decision by a United States Court of Appeals holding that in order to state a sustainable infringement claim against a defendant, the plaintiff must do more than just allege that infringing activity took place through the defendant's IP address. Defendant submits that not only did the Ninth Circuit correctly apply the plausibility standard under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), that same standard should determine whether a plaintiff has stated a prima facie claim of infringement sufficient to warrant disclosure of a "John Doe" defendant's identify pursuant to a plaintiff's subpoena. Under the *Iqbal/Twombly* standard, Strike 3 has failed to state a prima facie claim of infringement against the defendant in this case, who has a palpable privacy interest in not having his name and address disclosed to a pornographer.

## II. BACKGROUND

Strike 3 produces and distributes pornographic movies through subscriptions to its internet web sites and on DVDs, and also licenses them to "popular broadcasters" for third-party distribution. Complaint for Copyright Infringement (cited herein as "Compl.") (Docket No. 1), at ¶¶ 3, 13. Strike 3's pornographic web sites include www.blacked.com, which offers "interracial erotica"; www.blackedraw.com, which offers "interracial hardcore" pornography;

www.tushy.com, which appears to offer pornography emphasizing anal sex; and www.vixen.com, which appears to offer more ostensibly generic categories of pornography.

Strike 3 claims that its pornographic movies "have had positive global impact". Compl., at ¶ 15. Nevertheless, it acknowledges that many people would be embarrassed and humiliated if they were publicly associated with the consumption of content from Strike 3's pornography web sites, regardless of whether the association were valid. *See* Plaintiff's Memorandum of Law dated April 23, 2018 (Docket No. 7), at 4; Declaration of Greg Lansky dated January 19, 2018 (Docket No. 7-1) (cited herein as "Lansky Decl."), at ¶ 28.

Strike 3 applies for registrations for its pornographic movies with the United States Copyright Office – including, as alleged, the movies at issue in this action – and vigorously seeks to enforce them against individuals who Strike 3 claims are enjoying and sharing its pornographic movies without paying for them. *See* Compl., at ¶¶ 3, 31-32. During the past few years, Strike 3 has filed hundreds if not thousands of copyright infringement actions across the country against "John Doe" defendants, identified only by their Internet Protocol ("IP") addresses, for allegedly downloading and distributing unauthorized copies (or portions thereof) of Strike 3's pornographic movies.

As alleged, unauthorized copies of Strike 3's copyrighted pornographic movies are widely shared and readily available on the internet by means of the BitTorrent file-sharing protocol. *See* Compl., at ¶¶ 4, 16. Strike 3 claims that once it has put one of its copyrighted pornographic movies onto one of its web sites for its paying customers to view, "it takes as little as four minutes to be downloaded on to torrent websites." Lansky Decl., at ¶ 23. In *Malibu Media, LLC v. Doe*, 2015 WL 4092417, at *1–2 (S.D.N.Y. July 6, 2015), Judge Hellerstein provided a concise description of the BitTorrent protocol:

> BitTorrent is a peer-to-peer file-sharing protocol that allows users to transfer large files over the internet by breaking the complete file (the "Seed") into small pieces to be downloaded in parts. Other users ("Peers") download a small "torrent" file that contains an index of the pieces and directions for connecting to the Seed. When Peers connect to the Seed, they download pieces of the file at random, and begin sharing each piece once it has completed downloading. After all the pieces are downloaded, the BitTorrent software reassembles the pieces into a complete file for the Peer to view.

Strike 3 claims that it is too difficult to identify the "initial seeder" who first downloads a pornographic movie for unauthorized distribution so as to try to stop the infringing activity at its source. *See* Compl., at ¶ 23. Rather, "[t]he only effective way to stop the piracy of our movies on BitTorrent networks is to file lawsuits like this one", which target the IP addresses associated with transmissions of bits of unauthorized copies of Strike 3's movies. *Id.*, at ¶ 27. Strike 3 retains a German company, IPP International UG ("IPP"), to monitor BitTorrent file distribution networks to identify IP addresses suspected of being used by individuals to distribute its copyrighted movies. *See* Compl., at ¶ 24; Declaration of Tobias Fieser dated April 10, 2018 (Docket No. 7-2, cited herein as "Fieser Decl."), at ¶¶ 5-6. Strike 3 then files lawsuits, like this one, against the unidentified "John Does" associated with IP addresses identified by IPP, and moves *ex parte* for leave to subpoena the subscriber's identity from the ISP.

In this manner, Strike 3 has filed a multitude of nearly identical "John Doe" lawsuits in federal courts throughout the country, including the 62 lawsuits pending in 2018 in this district which Strike 3 identified in its Notice of Related Cases filed in this action (Docket No. 8). Indeed, there is a virtually identical case pending before this Court, *Strike 3 Holdings, Inc. v. John Doe subscriber assigned IP address 209.122.239.174*, Case No. 1:18-CV-01576 (VEC). Notably, although in that case Strike 3 is represented by a different law firm, Fox Rothschild LLP, the pleadings and papers filed in that case are virtually identical to those filed by Strike 3's attorneys at The James Law Firm PLLC in this case.

As discussed above, Strike 3's general strategy is to reach a quick settlement with the subscriber whose identify is disclosed by the ISP or, if that is not feasible, to end the case. For example, of the 62 "John Doe" lawsuits pending in this district disclosed by Strike 3, 55 were terminated following Strike 3's filing of either a notice of settlement or a notice of voluntary dismissal. Of those 55 cases, Strike 3 filed an affidavit or waiver of service of its summons in only four cases, demonstrating how effective the service of Strike 3's subpoena on an ISP is in persuading a defendant to reach a speedy resolution. *See* RLR Decl., at ¶ 8 and Exh. A thereto.

Of the seven cases still pending, four have been extended to give Strike 3 additional time to accommodate the subpoena process (including the case filed by Fox Rothschild pending in this Court), in one a certificate of default has been filed, and in another one a settlement conference is scheduled. In the seventh still-pending case, the "John Doe" defendant filed a motion *pro se* to quash Strike 3's subpoena after the ISP had already complied with it. *See id.* The instant case appears to be the first in this district in which a "John Doe" defendant has appeared through counsel to timely challenge Strike 3's subpoena.

### III.   STRIKE 3'S SUBPOENA IN THIS ACTION

Strike 3 commenced this action on March 26, 2018 against "John Doe subscriber assigned IP address 24.104.252.172", from which unauthorized content from each of Strike 3's four pornographic web sites was allegedly downloaded and distributed. *See* Compl., at ¶ 4 and Exh. A thereto. Strike 3 concedes that its sole basis for alleging that that particular individual infringed its copyrights is that the infringing activity involved one or more electronic devices using the stated IP address. *See* Fieser Decl., at ¶ 7.

On April 23, 2018, Strike 3 moved *ex parte* for leave to serve a pre-Rule 26(f) conference subpoena on the ISP, Spectrum, for the true name and address of the ISP's subscriber to whom the IP address was assigned. In support of its motion, Strike 3 submitted the Declaration of

Tobias Fieser (cited above), an employee of Strike 3's German investigative firm IPP, who states that he oversees IPP's investigations for Strike 3.  Mr. Fieser avers that "IPP's forensic activity records" indicate that "IPP's forensic servers connected to an electronic device using IP Address 24.104.252.172" from which they were able to download small pieces of Strike 3's movies. Fieser Decl., ¶¶ 7-8.

Strike 3 also submitted the Declaration of John S. Pasquale dated April 7, 2018 (Docket No. 7-3, who states that he works for a cyber security firm in Maryland, 7 River Systems, LLC, and that he reviewed and confirmed IPP's forensic evidence.  In addition, Strike 3 submitted the Declaration of Susan B. Stalzer dated April 2, 2018 (Docket No. 7-4, cited herein as "Stalzer Decl."), who states that she works for Strike 3.[3]  *See* Stalzer Decl., at ¶ 3.  Ms. Stalzer was tasked with actually viewing the files containing the pieces of movies provided by IPP to confirm that they were "identical, strikingly similar or substantially similar to" portions of Strike 3's pornographic movies.  *Id.*, at ¶¶ 7-10.

Those same three individuals have submitted substantially identical declarations in hundreds or thousands of "John Doe" lawsuits filed by Strike 3 in this district and in other districts across the country, differentiated mainly by the substitution of the particular IP address at issue in each case.  None of them claims to have any evidence or knowledge of who might have engaged in the allegedly infringing file-sharing, beyond the associated IP address.

By Order dated June 26, 2018, this Court granted Strike 3's *ex parte* motion.  The Court noted, however, the "substantial concerns related to Defendant's privacy, given the nature of the

---

[3]     Although Ms. Stalzer claims to work for Strike 3, her viewing of pornographic movies appears to be a side job.  In another "John Doe" lawsuit filed by Strike 3 in 2017 in the Western District of Washington, *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.225.38.130*, 17-CV-01731, the defendant presented compelling evidence that Ms. Stalzer is actually a professional real estate agent who lives and works in the Chicago area.  Strike 3's place of business is in Studio City, California.  *See* RLR Decl., at ¶ 12 and Exh. C thereto.

copyrighted material at issue and the risk of a false identification by Defendant's ISP", and granted Strike 3's motion subject to a protective order which, among other things, required Spectrum to provide defendant notice of the subpoena and 60 days thereafter to object to it, and permitting defendant to proceed anonymously.

After the subpoena was served and defendant received the required notice from Spectrum, defendant engaged undersigned counsel.  On September 12, 2018, this Court granted defendant's letter motion, with the consent of plaintiff's counsel, to extend the time for defendant to move to quash the subpoena to September 26, 2018.  (Docket No. 15)

## IV. ARGUMENT

The Second Circuit has adopted the following five-part test as "the appropriate general standard for determining whether a motion to quash, to preserve the objecting party's anonymity, should be granted:

> "(1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy."

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) *(*quoting *Sony Music Entertainment Inc. v. Does 1-40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)).  Here, the first and fifth factors militate squarely in favor of quashing Strike 3's subpoena to Spectrum.

Defendant in this case plainly has a reasonable expectation of privacy in its legitimate use of the Internet.  *See id.* at 118 ("To the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity.")  While a defendant may not wield the anonymity afforded by the First Amendment to shield infringing activity, *see id.*, neither should a plaintiff be permitted to eviscerate the legitimate expectation of

8

privacy based on conclusory allegations of infringement by the defendant that would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops 'short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The sole basis alleged by Strike 3 for its claim that defendant infringed its copyrights is that its hired investigators were able to connect with an electronic device associated with an IP address which at the relevant time was assigned to defendant, from which they downloaded small pieces of some of Strike 3's pornographic movies over a BitTorrent file sharing network. But "it is no more likely that the subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call." *BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. at 84.

Strike 3 has not "alleged a sufficient link between defendant and the IP address at issue, which might have been spoofed, used without the defendant's knowledge or consent, or otherwise falsely implicated." *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 73.225.38.130*, W.D. Wash., Case No. 17-CV-01731, Minute Order dated June 6, 2018 (submitted herewith as RLR Decl., Exh. D thereto). Its allegations are, at most, "merely consistent with" liability for infringement on the part of defendant, and do not cross the line into plausibility so as to state a claim of entitlement to relief. Having failed to allege any sustainable claim against defendant, its subpoena should be quashed. *See, e.g.*, *Strike 3 Holdings LLC v. Doe*, 2018 WL 1924455, *3 (D. Minn. Apr. 4, 2018) ("weighing Plaintiff's property interest against Defendant's privacy interest, the Court concludes that it must deny Plaintiff's *ex parte* motion"); *Malibu Media, LLC v. Doe*, 2015 WL 4092417 (S.D.N.Y. Jul. 6, 2015) (Hellerstein, J.) (denying *ex parte* motion where "even if Malibu's copyrights are valid, Malibu has not

established a violation by the individual *to whom the relevant IP address is registered*." (emphasis in original)).

The only <u>legitimate</u> purpose of Strike 3's subpoena to Spectrum would be to obtain defendant's name and address so that Strike could effect service of process of its summons. But having done so, Strike 3 would still be no close to stating a plausible claim that this defendant infringed its copyrights, and this action would be ripe for Rule 12(b)(6) motion to dismiss. Thus, there is no proper purpose for Strike 3's subpoena, and therefore it should be quashed.

## V.   CONCLUSION

The courts should not allow pornographers, or anyone else, to use the discovery process as a tool to breach the privacy of Internet users against whom they cannot state a plausible claim for relief. For the reasons set forth above, defendant respectfully asks this Court to quash Strike 3's subpoena to Spectrum, and to grant such other and further relief as the Court may deem just and proper.

Dated: September 26, 2018                    **BARTON LLP**

By: _____
Maurice N. Ross
Randall L. Rasey

420 Lexington Avenue, 18th Floor
New York, NY 10170
(212) 687-6262
mross@bartonesq.com
rrasey@bartonesq.com
*Attorneys for Defendant*