UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>         Plaintiff,<br><br>  -vs.-<br><br>JOHN DOE subscriber assigned IP address 24.104.252.172,<br><br>         Defendant. | 18 CV 2648 (VEC) |

### DEFENDANT'S REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF MOTION TO QUASH SUBPOENA

  Defendant "John Doe", identified in this action only as an internet services subscriber assigned IP[1] address 24.014.252.172, hereby replies to "Plaintiff's Response in Opposition to Defendant John Doe's Motion to Quash Subpoena" (cited herein as "Pl. Memo.") filed by plaintiff Strike 3.[2]

  Federal courts are now recognizing that under the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff cannot state a valid copyright infringement claim against an individual internet user merely by alleging infringing activity through an IP address associated with that individual. In response, Strike 3 contends that that does not matter, because it should still be allowed to demand the identity of the anonymous user, obtain service of process over that individual, and then subject the individual to discovery in order to determine whether it is even possible for Strike 3 to state any valid infringement claim against the individual.

---

[1]  Shortened names and defined terms used herein have the same meanings as in defendant's moving papers.

[2]  Defendant submits herewith and relies upon the Reply Declaration of Randall L. Rasey dated October 17, 2018 (cited herein as "RLR Reply Decl.").

But under Rule 11 of the Federal Rules of Civil Procedure, a plaintiff is required to conduct a sufficient inquiry to determine whether it has factual support for its claims before it files a pleading – not after.  Strike 3 is not entitled to file its pleading first, and then to marshal the discovery rules to conduct its investigation, and the courts should not grant it *carte blanche* to invade the privacy of anonymous internet users in order to drag them into litigation regardless of whether it can state any valid infringement claim against them.

It matters here that Strike 3 is a pornographer.  While the production and distribution of pornographic movies is a lawful business in which Strike 3 might truly be "raising the bar" and improving working conditions for performers as it claims, and Strike 3's movies may be entitled to the protections afforded by federal copyright laws, pornography nevertheless carries significant social and religious stigmas in many segments of society.  Defendant has a First Amendment right not to have its anonymity breached by a pornographer, which is not outweighed by the desire of Strike 3 to drag defendant into litigation and to compel it to defend itself against unsustainable claims of illicit enjoyment and sharing of pornography.

The determinative issue here is not whether defendant can establish a valid defense to Strike 3's infringement claim.  Rather, it is whether Strike 3 has pleaded any plausible, valid, sustainable claim against defendant.  Under compelling case law from the Ninth Circuit and district courts around the county, including the Southern District of New York, Strike 3 has not alleged a valid infringement claim against defendant under the *Iqbal/Twombly* plausibility standard, and is not entitled to breach defendant's right of anonymity.  Therefore, this Court should quash Strike 3's subpoena to defendant's ISP. [3]

---

[3]  "To the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010); *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *2 (S.D.N.Y. Sept.

I.   **ARGUMENT**

A.   **MERE ASSOCIATION WITH AN ALLEGEDLY INFRINGING IP ADDRESS IS NOT SUFFICIENT TO OVERCOME DEFENDANT'S PRIVACY INTEREST.**

As discussed in defendant's moving papers, the recent decision by the Ninth Circuit Court of Appeals in *Cobbler Nevada, LLC v. Gonzalez*, 901 F.3d 1142 (9th Cir. 2018) established that "a bare allegation that a defendant is the registered subscriber of an [IP] address associated with infringing activity" is not sufficient to state a claim for direct or contributory infringement under the plausibility standard of *Iqbal* and *Twombly*. While the Ninth Circuit's decisions are not binding on this Court, *Cobbler Nevada* is authoritative, persuasive case law that accords with rulings by various district courts around the country. *See, e.g.*, *Malibu Media, LLC v. Doe*, 2015 WL 4092417 (S.D.N.Y. Jul. 6, 2015) (Hellerstein, J.) (denying *ex parte* motion where "even if Malibu's copyrights are valid, Malibu has not established a violation by the individual *to whom the relevant IP address is registered*." (emphasis in original)). *See also Malibu Media, LLC v. Tsanko*, 2013 WL 6230482, at *9 (D.N.J. Nov. 30, 2013) (noting that "[s]ome courts have questioned whether a plaintiff can sufficiently allege a claim for copyright infringement where a defendant has been identified only by its IP address", and deferring ruling on defendant's Rule 12(b)(6) motion to dismiss pending further briefing); *AF Holdings LLC v. Rogers*, 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013) ("the Court orders Plaintiff to provide a more definite statement setting forth the factual basis for its allegation that Defendant used IP address 68.8.137.53 to infringe its copyright").

Under *Cobbler Nevada*, Strike 3's complaint in this case, which pleads no facts against this particular defendant other than that it is associated with an IP address, fails to state a valid

---

29, 2016) (under *Arista Records*, defendant had standing to challenge subpoena issued to his ISP).

claim for copyright infringement against this defendant.  Strike 3 tries to distinguish *Cobbler Nevada* by pointing out that in that case the complaint was dismissed after the district court had granted the plaintiff's *ex parte* motion to subpoena the defendant's ISP and subsequent *ex parte* request to subpoena the identified subscriber for a deposition after he failed to respond to the plaintiff's communications.  *See* Pl. Memo., at 11-12.  But unlike the defendant in this case, the defendant in *Cobbler Nevada*, Gonzales, failed to object to the plaintiff's subpoenas and did not appear in the case until after plaintiff had served its summons and amended complaint on him.

Thus, the Oregon district court which allowed the subpoenas was not asked to consider any opposing arguments to the plaintiff's *ex parte* applications, and, in particular, was not presented with the argument that the plaintiff had failed to state a plausible claim against Gonzales under the *Iqbal/Twombly* standard.  Once Gonzales appeared and made that argument through counsel, first the magistrate judge, then the district judge, and finally the court of appeals found unequivocally that the plaintiff had not pleaded a valid claim for relief:

> The direct infringement claim fails because Gonzales's status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer. Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer.

*Cobbler Nevada,* 901 F.3d at 1145.

Strike 3 takes the position that the decisions against it cited in defendant's moving memorandum, by district courts in Minnesota and the Western District of Washington, were wrongly decided, which of course it is free to argue.  *See* Pl. Memo. at 7-9, discussing *Strike 3 Holdings, LLC v. Doe*, W.D. Wash., Case No. 17-CV-01731, Minute Order dated June 6, 2018 (granting motion for more definite statement because Strike 3 failed to allege "sufficient link between defendant and the IP address at issue"), and  *Strike 3 Holdings LLC v. Doe*, 2018 WL

4

1924455, *3 (D. Minn. Apr. 4, 2018) ("weighing Plaintiff's property interest against Defendant's privacy interest, the Court concludes that it must deny [Strike 3]'s *ex parte* motion").  But Strike 3 wrongly suggests that all of Judge Hellerstein's concerns expressed in *Malibu Media, LLC v. Doe*, 2015 WL 4092417 (S.D.N.Y. Jul. 6, 2015) have since been addressed by the protective orders upon which courts in this district have been conditioning the issuance of Strike 3's subpoenas to ISPs.

In fact, during the past year, Judge Hellerstein has denied Strike 3's attempts to subpoena anonymous subscribers' identities from their ISPs in three cases.  On March 8, 2018, Judge Hellerstein granted the defendant's motion to quash Strike 3's subpoena in *Strike 3 Holdings, LLC v. Doe*, 17-CV-8956 (AKH), on the ground that "[b]y failing to identify which copyrighted materials [Strike 3] owns, and which materials Defendant infringed on, the Complaint fails to contain sufficient factual matter to 'state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570).  *See* RLR Reply Decl., Exhibit F thereto.  Since then, on July 23, 2018, Judge Hellerstein issued rulings against Strike 3 in two additional cases, *Strike 3 Holdings, LLC v. Doe*, 18-CV-5588 (AKH), and *Strike 3 Holdings, LLC v. Doe*, 18-CV-5592 (AKH), denying on the same ground Strike 3's *ex parte* motions for leave to subpoena the defendants' ISPs.  *See* RLR Reply Decl., Exhibits G and H thereto.

Strike 3 chose not to challenge any of Judge Hellerstein's orders in those cases, and instead promptly filed a notice of voluntary dismissal without prejudice in each case after Judge Hellerstein ruled against it.  In fact, when a case filed by Strike 3 on August 11, 2018, *Strike 3 Holdings, LLC v. Doe*, 18-CV-07267, was assigned to Judge Hellerstein, Strike 3 did not even

bother with its usual *ex parte* motion for leave to subpoena the ISP, and just filed a notice of voluntary dismissal without prejudice.[4] *See* RLR Reply Decl., Exhibit I thereto.

### B. STRIKE 3 HAS NOT SHOWN THAT QUASHING THE SUBPOENA WILL DENY IT A REMEDY.

Strike 3 asserts in its opposing memorandum that it would be "left without any remedy" if its subpoena to defendant's ISP is quashed. Pl. Memo., at 13. To be sure, quashing the subpoena will make it harder for Strike 3 to try to obtain a settlement payment from defendant. But Strike 3 has not shown that it has no other viable means of protecting its copyrights in its pornographic movies.

According to Strike 3's principal, Greg Lansky, the unauthorized distribution of its pornographic movies over BitTorrent networks starts when "initial seeders" download movies from Strike 3's subscription web sites for distribution via torrent web sites. Lansky Decl., at ¶23. Mr. Lansky avers that he has "found it impossible" to identify the initial seeders "with the large volume of our subscriber base". *Id.* Therefore, "[t]he only effective way to stop the piracy of our movies on BitTorrent networks is to file lawsuits like this one" against individuals associated with IP addresses at which Strike 3's investigator in Germany claims to have detected infringing activity. *Id.*, at ¶27.

Plainly, if Strike 3's goal were truly to shut down the rampant "piracy" of its pornographic movies, the most effective way to do so would be to stop it at the source, by preventing the illegal downloads by the initial seeders. Strike 3 provides no evidence or explanation of why it supposedly cannot do so, beyond Mr. Lansky's conclusory statement that

---

[4]     The attorney who represented Strike 3 in those four "John Doe" lawsuits before Judge Hellerstein is the same attorney representing Strike 3 in this case. It is misleading for Strike 3 to argue that Judge Hellerstein's concerns from *Malibu Media* are adequately addressed by this Court's protective order without at least acknowledging Strike 3's recent history before him.

he has found it "impossible" to identify the initial seeders because of the "large volume" of subscribers.

Mr. Lansky also avers that Strike 3 is "undeniably the most pirated adult content in the world". (Lansky Decl., at ¶25)  Therefore, there must also be a "large volume" of persons downloading and distributing bits of unauthorized copies of Strike 3's pornographic movies over BitTorren networks, and yet Strike 3 and its investigators have eagerly undertaken to ferret them out for its "John Doe" lawsuits.  Strike 3 proffers no explanation for why its investigators can trace small pieces of its pornographic movies being transferred among specific IP addresses, but cannot trace the unauthorized downloading of entire movies from its subscription web sites.  Nor does Strike 3 explain what encryption methods or other technological fixes it might have tried to prevent unauthorized downloads from its subscription web sites.

And in any event, Strike 3's campaign of targeting individual users by identifying allegedly infringing IP addresses and filing "John Doe" lawsuits has not proved to be a particularly effective means of stopping the alleged piracy of Strike 3's pornographic movies. In fact, it appears that in nearly two out of three of Strike 3's "John Doe" cases in which the courts in this district have permitted Strike 3 to discover the IP subscriber's identity, Strike 3 voluntarily dismissed the case without a settlement, and did not pursue discovery in any of them. *See* RLR Reply Decl., at ¶¶ 9-12 and Exh. E thereto.

Strike 3 quotes language from the Ninth Circuit's recent decision in *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033 (9th Cir. 2018), stating that copyright infringement lawsuits against individuals "'have served as a teaching tool, making clear that much file sharing, if done without permission, is unlawful[,] and apparently have had a real and significant deterrent effect.'"  *Id.* at 1041 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S.

913, 963 (2005) (Breyer, J., concurring)).  *See* Pl. Memo., at 12.  But in *Glacier Films*, the plaintiff was a legitimate Hollywood production company suing for unauthorized downloading of a single movie prior to its commercial release, the defendant admitted his willful infringement, and the parties stipulated to a consent judgment for $750 in statutory damages.  *See Turchin*, 986 F.3d at 1037.  The court remarked on the "deterrent effect" of the infringement suit in the context of reviewing the district court's denial of attorneys' fees, and was careful to distinguish that case from the "unsavory characteristics" of other "BitTorrent copyright cases" by noting, among other things, that the production company "did not demand thousands of dollars to settle" its claim.  *Id.*, at 1042.

Strike 3's "John Doe" litigation strategy is quite different from the production company's in *Glacier Films*.  While Strike 3 may have learned to avoid the most blatantly unsavory tactics of copyright trolls noted by the Ninth Circuit, and which Judge Hellerstein found troubling in *Malibu Media, LLC v. Doe*, 2015 WL 4092417 (S.D.N.Y. Jul. 6, 2015), Strike 3 still makes five-figure demands to settle its claims as soon as it is able once it learns a John Doe's true identity.  *See, e.g.*, RLR Reply Decl., at ¶19 and Exh. J thereto (settling "John Doe" case for $14,001).  That Strike 3 waits for the defendant to make the first inquiry about settlement, or, as in this case, until the defendant appears through an attorney, does not significantly reduce the coercive effect on an individual who does not want to become embroiled in litigation with a pornographer.

If Strike 3 were actually interested in establishing legal precedent with which to enforce its copyrights and to protect against piracy of its pornographic movies, rather than simply chasing five-figure settlements, then one might expect it to challenge unfavorable rulings, as the production company in *Glacier Films* did, and to pursue discovery in anticipation of trial in at least some cases.  But Strike 3 routinely declines to prosecute a case if a quick settlement cannot

be had, avoids discovery, and does not challenge adverse rulings. *See* RLR Reply Decl., at ¶¶ 12, 15-18.

In short, Strike 3's litigation conduct is not consistent with its stated goal of stopping internet piracy of its pornographic movies. Rather, its litigation conduct demonstrates that its true goal is to maximize profits from its copyright registrations by using the discovery process as a tool for obtaining quick settlements from individual internet users with minimal litigation. Strike 3's desire to maximize profits should not be allowed to trump defendant's legitimate privacy interest in not having its name and address disclosed to a pornographer.

## II. CONCLUSION

For the reasons set forth above, in the accompanying declaration, and in defendant's moving papers, defendant respectfully asks this Court to quash Strike 3's Subpoena to Spectrum, and to grant such other and further relief as the Court may deem just and proper.

Dated: October 17, 2018

**BARTON LLP**

By: _____
Maurice N. Ross
Randall L. Rasey

420 Lexington Avenue, 18th Floor
New York, NY 10170
(212) 687-6262
mross@bartonesq.com
rrasey@bartonesq.com
*Attorneys for Defendant*